UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DEBRAH ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:05-CV-378 |
| | ) | |
| CASEY FURGE, et. al | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

The Defendants, Fort Wayne Police Officers Casey Furge, Joe Musi, Dan Campbell, Timothy Bobay, Justin Henry, Robert Kirby, Frederick Ray, John Greenlee, Joshua Hartup, Dan Camp, Steve Allen, and the City of Fort Wayne, ask for summary judgment on the claims brought by Plaintiff Debrah Armstrong. The Plaintiff asserts claims for excessive force and unreasonable search arising out of a search warrant that was executed on May 11, 2004. The Plaintiff claims the officers unlawfully searched her apartment because they entered without announcing their identity or purpose, and because they did wait long enough after knocking before breaking in the door. She also claims they used excessive force by pointing a gun at her head for several minutes even though she did nothing to suggest she was a threat. The Defendants argue that they announced and waited a reasonable time before entering her apartment, and that they did not use excessive force. They also assert qualified immunity.

For the reasons stated below, the Court denies the Defendants motions for summary judgment, except that the officers who were not present and did not enter the Plaintiff's apartment are dismissed.

**A.     Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing

2

that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate

3

the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.     Material Facts**

On May 11, 2004, a confidential informant informed Detective Bobay that the informant had been in Apartment 70 at Cheviot Drive earlier that day and that the informant had observed a garbage bag full of money. According to the informant, an unknown African-American male who lived at the apartment told the informant the money was counterfeit. The informant also told Bobay the unknown male had a sandwich bag full of crack cocaine. Bobay prepared an affidavit so that he could obtain a search warrant for the apartment. The Allen Superior Court issued a search warrant for Apartment 70 at Cheviot Drive at 9:58 P.M. on May 11. The search warrant stated:

> You are instructed to diligently search for the following described evidence, to wit: Cocaine and derivatives thereof, United States Currency, firearms and/or weapons, records of drug transactions and /or other financial information, any and all safes and / or lockboxes, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances.

(Def. Summary J. Br. 2, DE 20.)

In May 2004, the Plaintiff lived at Ashley Court Apartments on Cheviot Drive, Apartment 70. Her boyfriend Dennis Freeman lived with her at that apartment. The apartment was a one bedroom apartment, having a living room area, a dining room, a separate bedroom, and a kitchen. The apartment was on the second floor, and it had a door opening to a deck.

On the night of May 11, 2004, the Plaintiff was in bed, in her bedroom, awake and

4

watching television. She was wearing only a knee-length t-shirt. Sometime after 11:00 P.M., she heard a knock on the door. Thinking it was her boyfriend, she got out of bed and walked toward the door. She heard a second knock and said, "Who is it?" (Pl. Dep. 17, Def. Ex. 1, DE 19-2.) When she was about three feet away from the door, the police broke down the door and entered the apartment. One officer had a gun pointed to the Plaintiff's head as he entered and told her to get on the floor. Due to the rush of the officers entering her apartment, the Plaintiff stumbled backwards and fell to the ground. When she fell, her shirt came up. She sat on the floor uncovered, and the officer continued to point the gun at the Plaintiff's head. The gun was held close to the Plaintiff's head so that it was almost touching her, but it did not touch her. She sat on the floor afraid to move for "a few minutes" or a "couple minutes," until a female officer brought her into the bathroom so that she could get dressed. (*Id.* at 32.) After getting dressed, the officers handcuffed her and she sat on the couch.

  The Plaintiff stated in her deposition that "maybe six, seven seconds" passed from the time she first heard a knock until the police officers broke through her door, but that it was "nothing long." It was "[l]ong enough for [the Plaintiff] to get out [of] the bed and go to it." (Pl. Dep. 40, DE 19-2.) The Plaintiff also said that she never heard anybody call out or say anything. The Plaintiff submitted an affidavit supplementing her deposition testimony, stating "only a few seconds, perhaps as much as six or seven passed" between the time she heard the knock and when the officers entered the apartment. (Pl. Aff. 1, Pl. Ex. A, DE 25-3.) She also says that "the police did not identify themselves" and that she "heard nothing on the other side of the door." (*Id.*)

  The Plaintiff admits that officers Ray, Allen, Greenlee, and Musi had no personal

5

involvement in the entry into the Plaintiff's apartment. Officers Furge, Bobay, Kirby, Henry, Hartup, and Camp participated in the entry and search of the apartment, or were otherwise present in the apartment during the search.

### C.     Procedural Background and the Defendants' Motion to Strike

The Plaintiff filed her Complaint against the Defendants on October 4, 2005, and an Amended Complaint on March 1, 2006. The Defendants filed for summary judgment on August 24, 2006. The Plaintiff responded on October 16, 2006, and the Defendants replied on November 7, 2006.

The Plaintiff, in her response, admits that the Defendants not involved in the search of her apartment are entitled to summary judgment, and the Court grants the Defendants' motion for summary judgment as to Defendants Ray, Allen, Greenlee, and Musi.

The Defendants filed a motion to strike the Plaintiff's affidavit on November 7, 2006, arguing that the Plaintiff contradicted her deposition testimony that six or seven seconds passed from the first knock to the officers' entry when she states in her affidavit that a few seconds passed between the first knock she heard and the officers' entry into the apartment. Defendants also say she is altering her testimony by saying she heard nothing on the other side of the door prior to the officers' entry.

The Court sees no contradiction between the Plaintiff's deposition testimony and her affidavit. The Plaintiff's affidavit says there was as many as seven or six seconds between the first knock and the officers' entry, which is in line with her deposition testimony. That she heard nothing on the other side of the door prior to the officers entry also does not contradict her

deposition testimony. The motion to strike is denied.

**D.    Excessive Force Claim**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). If an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them," from the perspective of a reasonable officer, the officer's actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Of course, the 'calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Fox v. Pttinger*, 2005 WL 1712216, *8 (N.D. Ind. 2005) (quoting *Graham v. O'Connor*, 490 U.S. 386, 396–97 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). It is clearly established that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)).

The officers had a search warrant for the apartment to look for cocaine and items related to drug distribution, including firearms. When they broke through the door to execute their search warrant, they did not know who would be in the apartment. They saw the Plaintiff immediately inside and ordered her to get on the ground. It was not unreasonable for them to have had their guns drawn as they entered so that they could be prepared for whatever was on the other side of the door. Also, taking into account the tense and rapidly evolving circumstances that can exist when carrying out search warrants for drugs and firearms, it was not unreasonable to keep the gun on the Plaintiff until the apartment could be secured.

However, Plaintiff alleges that after she fell to the floor, the officer continued to point the gun at her head for several minutes. It is not clear how long it took the officers to secure the apartment and determine there were no other threats present. The apartment was small and there

were a number of officers involved in the search. In light of this, it is reasonable to infer that the officers in the Plaintiff's apartment had it secured in a short amount of time, and that the gun was held to the Plaintiff's head for a few or a couple minutes after the apartment had been secured. She states the gun was almost touching her head. The Plaintiff says she did nothing to suggest she was a threat in any way. She sat on the floor for a few, or a couple, minutes, exposed due to her shirt being lifted when she fell backward. It is reasonable to infer that the officers would have seen how little she was wearing and would have determined she was not armed and posed no threat. Taking all inferences from the evidence to favor the Plaintiff, there are genuine disputes as to whether an officer pointed a gun at the Plaintiff's head, how long the gun was pointed at the Plaintiff's head, and how close to her head the gun was held.

Accepting as true all facts and reasonable inferences that favor the Plaintiff, the Court must accept as true the Plaintiff's evidence that an officer held a gun inches from her head for several minutes as she sat exposed on the floor. The Court also accepts as true that an officer continued to point a gun at the Plaintiff after the apartment had been secured. Under these circumstances, the officer who held the gun to the Plaintiff's head used excessive force.

The Defendants argue only that "If a gun was actually held near [Plaintiff's] head after the officers initially entered the apartment, it was done so merely in furtherance of the officer's safety." (Def. Br. 10, DE 19.) No explanation is offered as to how holding the gun to the Plaintiff's head was necessary for the officers' safety after the apartment had been secured. The Court agrees that a governmental interest at stake was the safety of the officers while they conducted their search. However, once the officers' safety was reasonable assured, no governmental interest was advanced by holding a gun on the Plaintiff. In considering the motion

9

for summary judgment, the Court must assume from the evidence submitted that an officer held a gun to the Plaintiff's head for several minutes after it was clear that nothing in the apartment threatened the officers' safety. At that point, handcuffing the Plaintiff would have furthered the officers' safety without needlessly imposing on her the risk or fear of being shot.

A reasonable jury could also find the officers who were present in the apartment liable for failing to intervene and prevent the excessive use of force. The apartment was small, and the gun was held to the Plaintiff's head for several minutes. Taking all reasonable inferences to favor the Plaintiff, the officers entering the apartment had a chance to see that the Plaintiff was wearing only a t-shirt and that she engaged in no threatening conduct. Therefore, the officers present had a reason to know excessive force was being used and had an opportunity to stop the excessive force. The female officer's successful intervention—she took the Plaintiff away from the officer who was pointing the gun at the Plaintiff's head and allowed her to get dressed—suggests any of the other officers present could have intervened sooner.

**E.     Unreasonable Search Claim**

The Fourth Amendment requires police officers to knock on a door and announce their identity and purpose before forcibly entering a home to execute a search warrant, unless an unannounced entry is reasonable. *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997). No-knock entries may be permissible if there are exigent circumstances, though the Defendants do not make that argument here. The knock and announcement must be loud enough to be heard. *United States v. Leichtnam*, 948 F.2d 370, 374 (7th Cir. 1991). Once an officer has knocked and announced, he must wait a reasonable amount of time before entering. What is a reasonable

10

amount of time depends on the facts known to the officers. *Leaf v. Shelnutt*, 400 F.3d 1070 (7th Cir. 2005).

In this case, the Plaintiff claims that she never heard the police officers announce their identity and purpose before forcibly entering her apartment, and that the officers waited only six or seven seconds after knocking before breaking through her door. She also says she called out "Who is it?" and heard no response before the officers entered. The Defendants state that they did in fact announce who they were at least twice, and that there is no dispute over whether they announced.

The Defendants' argument that there is no dispute as to whether the officers announced is easily dismissed. The Court accepts as true the Plaintiff's evidence and reasonable inferences from that evidence. The Plaintiff states that she was watching television, she heard a knock, walked toward the door, and asked, "Who is it?" The Plaintiff says she never heard any response or announcement from the officers on the other side of the door. Both parties describe the Plaintiff's apartment as small. Taking all reasonable inferences in favor of the Plaintiff, it is reasonable to infer that the police did not announce their identity or their purpose before entering the Plaintiff's apartment.

The Defendants cite *Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003), as supporting their argument, but the case is distinguishable. In *Molina*, the resident was asleep and woke to the sounds of screaming and yelling. Because the resident admitted to being asleep, there was no genuine dispute as to whether the officers were announcing before she woke up. Also, that she could not understand the yelling she heard did not create a dispute as to whether the yelling was the officers' announcement. *Id.* at 972. The facts here are not similar to those in *Molina*. The

11

Plaintiff says she was not asleep and heard the police officers knock. She heard nothing else, even after asking who was there. Therefore, it is reasonable to infer that she heard nothing other than knocking because the police made no announcement. The same inference could not be made in *Molina* because that resident was sleeping and actually heard yelling from outside her door.

The reasonableness of the timing of the officers' entry, under the evidence submitted by the Plaintiff, also supports her claim. At most, six or seven seconds passed from the first knock until the officers entered. Six to seven seconds borders on reasonable. *Id.* at 972 (noting under somewhat similar facts that "a five to thirteen second wait after 'knocking and announcing' did not violate the Fourth Amendment where 'the officers had information that the defendant was a dangerous felon in possession of a gun,' and an additional wait would have given the defendant time to destroy drugs"). However, the Plaintiff says she was three feet from the door and asked who was at the door after she heard a second knock. After that, the police officers broke through the door and entered her apartment. It is not clear how much time passed from the Plaintiff's response until the officers broke into the apartment, but it does not appear to have been more than a second or two. Absent any exigent circumstances, the officers should have waited more than one or two seconds to break down the door after hearing the Plaintiff respond to their second knock. Accepting the Plaintiff's account as true, and finding it to be reasonable to infer that the officers heard the Plaintiff's response, it was unreasonable to break through the door without responding to the Plaintiff's request for identification and without giving her more than a moment to open the door.

Because of the genuine disputes of material fact that exist as to whether the officers announced their identity and purpose, whether the Plaintiff replied to the officers' second knock

12

with "Who is it?", and what the timing of these events and the officers' entry were, the Court cannot say the officers search was reasonable at this stage in proceedings.

### F.     Qualified Immunity

Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Id.* at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's mistake was unreasonable. *Id.* at 201–202. It is the plaintiff's burden to show a defendant's conduct violated clearly established law, and she may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior

13

case with nearly identical facts; the plaintiff must produce case law showing the state of the law at the time of the officers' conduct was such that they had fair warning their conduct violated the Constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

### 1.     *Excessive Force Claim*

As discussed previously, taken in the light most favorable to the Plaintiff, an officer violated the Plaintiff's Fourth Amendment rights by holding a gun to her head for several minutes despite a lack of any indication that she posed a threat. Also, the other officers present in the small apartment were aware of the excessive force and had a chance to stop it, and so are potentially liable for failing to intervene.

The case *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000), supports the Plaintiff's argument that a reasonable officer would have known holding a gun inches from a person's head who obviously poses no threat violates that person's constitutional rights. In *Jacobs*, the court held that officers who broke into an apartment and pointed a gun to the resident's head for over ten minutes used an unreasonable amount of force, and were not entitled to qualified immunity. The court noted that though there was no threat to use the gun, it is reasonable to infer from the act of intentionally pointing a gun at a person that the gun will be used should the person not comply with the officer's wishes. *Id.* at 774 n.7. The *Jacobs* court went on to hold that a reasonable officer would know that it violates a person's rights to point a gun at a person when the officer has "no reason to suspect that [the person] was a dangerous criminal, or indeed that [the person] had committed any crime at all, [the person] was unarmed, and [the person] had done nothing either to attempt to evade the officers or to interfere with the execution of their

14

duties." *Id.* at 774. That description applies to the facts alleged by the Plaintiff. As soon as the officers had secured the apartment they would have known no threats were present. The fact that the Plaintiff was wearing only a t-shirt and laying on the floor should have made it obvious the Plaintiff was not dangerous and unarmed. The Plaintiff did nothing except submit to the officers' show of force. Therefore, *Jacobs* would have made it clear to a reasonable officer that continuing to point a gun at the Plaintiff's head for several minutes constituted excessive force.

Unlike *Jacobs*, in this case, the amount of time the gun was held to the Plaintiff's head was less than ten minutes. It is not clear from the facts how long the gun was held to the Plaintiff's head, but a few minutes is less than ten minutes. The amount of time is not critical however. Whether it was ten minutes or three minutes, once the officers could determine that the individual was not a threat and could be handcuffed, a reasonable officer would know that continuing to hold the gun to the individual's head served no governmental purpose and was excessive. In this case, it should have been apparent to the police officers that the woman lying on the floor with only a t-shirt on posed no threat to the five or six police officers who entered her apartment. She did nothing threatening, and there is no indication the police officers suspected her of any wrongdoing. Despite this, she says a gun was held to her head for several minutes. Holding a gun to her head for several minutes despite the lack of any threat to the officers' safety crossed the line established in *Jacobs* so that a reasonable officer would know it violated the Plaintiff's rights.

**2.      *Unreasonable Search Claim***

Taking the evidence in a light most favorable to the Plaintiff, the Defendants entered the Plaintiff's apartment without announcing their identity or purpose. Also, upon hearing a second knock, the Plaintiff asked who was at the door. The officers did not respond and broke down the door moments later. As previously stated, on these facts, the search was unreasonable and in violation of the Plaintiff's Fourth Amendment rights.

A reasonable officer facing these circumstances would have known it to be a violation of the Plaintiff's Fourth Amendment rights to have entered her apartment. It is clearly established and a reasonable officer would know that unless there are exigent circumstances, police officers must announce their identity and purpose before entering an apartment to carry out a search warrant. *Shelnutt*, 400 F.3d at 1082–83. The Defendants have not argued that any exigent circumstances required them to enter the Plaintiff's apartment without announcing their identity and purpose. Therefore, qualified immunity does not apply to bar the Plaintiff's claim for unreasonable search.

**ORDER**

The Defendants' motion to strike [DE 29] is DENIED. The Defendants' motion for summary judgment [DE 19] is DENIED in part and GRANTED in part. The following Defendants are DISMISSED from the case: Ray, Allen Greenlee, and Musi. The Plaintiff's claims remain pending against the other Defendants.

SO ORDERED on February 12, 2007.

    s/Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT